Good morning. May it please the Court, my name is Brad Axel, I'm counsel for Petitioner Carlo Ventre. Do you have a quiet voice normally? I do have a quiet voice. You may want to speak up. Okay, I apologize. I would like to begin by addressing several arguments that were made in a letter from the Attorney General that was submitted to the Court earlier this week. In that letter, a Third Circuit decision is cited for the proposition that the Court does not have jurisdiction to decide whether the BIA erred in finding that Mr. Ventre was not eligible for relief under Section 1229b, subsection a. The Third Circuit's reasoning, I think, went something like this. The issue of abandonment is a factual one, and that, therefore, the determination of whether the first element of eligibility under that provision, which is that you need to be a legal permanent resident for five years, was a factual question. Therefore, the Court of Appeals didn't have jurisdiction to review it. Actually, the question before the Court, as we framed it, is a little bit different. It assumes, although elsewhere we argue that the abandonment determination was erroneous, and we spend most of our brief talking about that, but even assuming that the abandonment determination was correct, just as a matter of logic, every alien who is applying for cancellation of removal has just been found removable and so cannot meet the definition in Section 1101a.20 of a lawfully admitted permanent resident. That definition speaks of being accorded the privilege of residing in this country permanently. That privilege is necessarily taken away when you are found removable. So everybody who applies for cancellation of removal doesn't meet that definition. Here, Mr. Ventrae was a legal permanent resident up until the time the immigration judge found that he was removable. And on that very same day, he filed his application. So we think that he does qualify for that element of eligibility under that section. The other two cases cited by the government in their letter, the Huang decision from the BIA and Singh v. Reno from the Ninth Circuit, were not cancellation of removal cases. They did talk about abandonment and the status change that happens, but they did not address the specific issues, so we don't think they're on point. Could I ask a question? The BIA not only addressed abandonment, but then it had an alternative holding that on a discretionary basis they affirmed the IJ's ruling in that respect. Do we have jurisdiction to review discretionary decisions like that? Not purely discretionary decisions. Elsewhere in our brief, we talk about some non-discretionary decisions that were made by the IJ, specifically her refusal to allow Mr. Ventrae to examine the confidential informant. That is critical because he repeatedly asked for the opportunity to do that. The Immigration Act provides that an alien, especially a pro se alien, is entitled to examine the evidence presented against him. The government in the letter submitted this week categorizes it as a confrontation clause issue. I think it's better described as a due process issue. This Court has held that due process principles, and I'm quoting from the Lopez-Umanzor case, due process principles prohibited an immigration judge from declining to hear relevant testimony because of a prejudgment about the witness's credibility or the probative value of the testimony. I think what happened in this case, Your Honor, is that at this point in the hearing, the immigration judge had prejudged Mr. Ventrae and had determined, in her opinion, what his credibility was. Can I ask you a question on that, though? How does the confidential informant's testimony bear on the question of abandonment? It actually bears on the cancellation removal issue, not on the question of abandonment. The discretionary issue? Well, abandonment is the government, the legal question for the court is not, it's whether the government met the burden of proof by clear, unequivocal, and convincing evidence. Did the government, just as a matter of law, submit clear, unequivocal evidence that Mr. Ventrae had abandoned his legal permanent residence? That's the initial issue that we spend most of our time on. But the testimony from the confidential informant came at the second stage of the case, where abandonment had already been found and the issue was whether he was entitled to cancellation. What do you do with the BIA's explicit ruling that, in the abundance of caution, we find that even setting aside issues related to the incident in Rome, which the CIA's testimony would have gone to, and the allegations of criminal solicitation, the record still supports the denial of relief and the exercise of discretion. So the BIA is essentially discarding that aspect and exercising its discretion. So how do we're ñ what's left for us to review? Well, the ñ as we argue in our reply brief, the refusal to hear a witness, the confidential informant, the confidential informant could have supported Mr. Ventrae's version of events on the solicitation issue. But they're setting it aside. That's correct. But the ñ in Lopez-Umanzor, the court says, well, any time you exclude evidence, it could affect the alien's credibility before the eyes of the immigration judge. And if it affected credibility on the solicitation issue, that might have spilled over into his credibility on other issues. And there were plenty. And Mr. Ventrae was defending himself while incarcerated. And on a pro se basis, he had very limited ability to call witnesses on his behalf. And the confidential informant was one ñ a critical witness that could have supported his testimony and therefore could have added to his credibility across the whole gamut of issues that were presented to the immigration judge. If people in the back row, please stop talking and laughing, or I will ask you to leave the courtroom. Thank you. Let me ask you a question about cancellation. They found ñ the agency found that even if your client was eligible, they ñ the agency would deny cancellation as an exercise of discretion, correct? That is correct. Do we have any jurisdiction over that, or do we dismiss that? The ñ I think you have jurisdiction over the evidentiary issues of, for example, whether or not the immigration judge ñ To abandonment. But if the ñ if the BIA says even if you're ñ even if you are eligible, we would not exercise our discretion, doesn't that mean that we have no authority to rule and we'd have to dismiss? Yes. But the ñ the legal point that is before the Court is the exercise of discretion is based on a calculus of a number of different factors, and one of those factors is Mr. Ventura's credibility across the board. I agree, but my ñ there may be something else left for us in the ruling, but on the cancellation issue, do you agree that if the board exercises its discretion that we cannot overrule that? Except on a due process basis. You're saying there would be a process element embedded in that ruling. We could review the due process. That's ñ that's what the argument that we're making. I agree that as a ñ just if it's a pure discretionary issue and there is a discretionary component, that's not what we're asking to be reviewed. We're asking to be reviewed the due process issue related to the confidential informant, which, if decided our way, could have affected the discretionary issue by altering the ñ Could have? Could have. And I think we don't have to prove that it ñ that, you know, beyond a reasonable doubt that it would have. We have to prove that it could have, it may have, and that's the language that's used in the Lopez and Manzor cases. You don't ñ when you prove a ñ when you have a due process violation, it doesn't have to. How do you prove it could have? I mean, anything could have happened, but how do you show that the exercise of discretion is somehow tainted? Well, the ñ the investigators who testified against Mr. Ventre testified not only about the conversation Mr. Ventre had with the informant that was tape recorded, but also the conversations that led up to that conversation. And those ñ so they were essentially testifying, making hearsay statements about what the confidential informant had told them. And that was improper, and Mr. Ventre didn't have a chance to examine the confidential informant on that point, to undermine their testimony and bolster his own. As it was, the immigration judge just had the ability to weigh Mr. Ventre versus three investigators, where ñ and the missing link was the confidential informant. Thank you. All right. Thank you, counsel. I did interrupt you, so I'll give you a few seconds rebuttal or whatever. Thank you. I'll ñ I'll save the rest of my time for rebuttal. Okay. Good morning, Your Honor. Terry Skadron for the Respondent Attorney General. This is a factually complex case, as the Court well knows from the record, but it boils down to a few very discreet questions. The threshold question, of course, is whether the evidence compels a finding that when Mr. Ventre kidnapped his daughter and took her with him to Italy, he had a continuous, uninterrupted intention to return to the country, this country, during the entirety of his ñ of his visit. Now, is your 28J submission attempting to suggest that we do not have jurisdiction to review that finding? No, it does not, Your Honor. I'm sorry if my opposing counsel misinterpreted that. The citation to Allaka was solely on the point of whether the board was correct in finding that Mr. Ventre was ineligible for cancellation of removal because he abandoned his LPR status. That was the sole point for which it was raised. Allaka was a criminal alien case. This is not on this record. The Court certainly has jurisdiction to review, under the substantial evidence, the question of intent. And just to run through the points upon which the board relied in finding intent to abandon permanent residence, you know, we submit that the factors, you know, clearly support the board's determination here. First, Mr. Ventre illegally took his daughter to Rome in contravention of a California custody order. Within a month of his arrival in Italy, he sued for custody of his daughter in an Italian court. In his papers to that court, he indicated that he believed his daughter was an Italian citizen. He was an Italian citizen. He was bringing his daughter to Italy essentially to live. Do you think we reach that in light of the alternative holding on the discretionary denial? Your Honor, the Court does reach that on the question of abandonment. All right. The discretionary denial goes to the question of cancellation of removal, which is in the second phase of the proceeding. Second step. Yes, second step. None of this, and incidentally, the evidence concerning what the circumstances of Ms. Dixtra's death in Italy and the solicitation evidence, none of that has any bearing on the abandonment issue. Why was it all brought into this trial then? It was brought in on the cancellation phase on the issue of whether he merited discretionary relief from removal. And it was relevant. You know, we submit it was not error to admit that evidence, but it was not essential to the agency's decision in this case. Just to complete the evidence that the Board relied upon on the abandonment claim, Mr. Ventre's statements to the Italian tribunal certainly were highly probative of his intent when he went to Italy. And there was additional evidence that supported the abandonment claim, namely that he allowed his house in the United States to go to foreclosure. He had his friends hold a garage sale for the remainder of his possessions. He had his truck shipped to Rome. He had possessions put in storage and didn't pay the storage fee, and those went, you know, those were repossessed. And during his time in Italy, he had his Italian passport renewed, and he listed Rome as his address. In these circumstances, we submit that the evidence certainly does not compel a finding that he had intended to return to the United States within a short period. Now, with regard to the relief phase of this case, we submit that the Board was correct in finding that in light of the abandonment of permanent residency, Mr. Ventre was statutorily ineligible for cancellation of removal. And that flows from the definition of an alien lawfully admitted for permanent residence in 8 U.S.C., you know, Section 101A20. That defines an alien lawfully admitted for permanent residence as one who has the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed. When an alien abandons permanent residence status by definition, their status has changed. And this is not the same as your garden variety of case where you have to await an immigration judge's determination that, for instance, a criminal conviction renders an alien removable. The finding of abandonment means necessarily that before the alien was placed in removal proceedings, that is, while Mr. Ventre was in Italy, his status changed because he abandoned that status. Now, that was one basis for the Board's holding. We submit that's correct and, therefore, the Court need not even consider the discretionary component or the due process claim that Petitioner is pressing with regard to the confidential informant evidence. But if the Court reaches the issue, first — I'm sorry. Why wouldn't we have to reach that? You won't have to reach it on the cancellation if you find that as a matter of statute he was ineligible to apply, because that's an alternative basis for the finding. The Court's correct that, or I agree with counsel, the Court does not have jurisdiction to reach the due process claim that has been raised here, but it need not do so because Mr. Ventre cannot show prejudice based on the admission of the evidence concerning the confidential informant because the Board relied, asserted alternative bases for its discretionary denial. None of that relied upon the evidence concerning Tony Dixter's death or the statements that Mr. Ventre was alleged to have made while he was in custody. I didn't address counsel's taint argument based on Lopez. I don't believe Lopez-Umanzar applies here at all. That case involved a situation where the alien was precluded from presenting expert testimony bearing on her allegations of domestic violence. And the case, as this Court held, boiled down to a credibility contest between the alien and a detective who testified concerning certain drug transactions that she was accused of having engaged in. The discretionary, the Board's final discretionary analysis in this case did not hinge on a credibility contest between Mr. Ventre and anyone. It rested, the Board wrote that Mr. Ventre's strongest equity in support of his cancellation claim was his relationship with his daughter. That, and the Board found that he hadn't had custody of his daughter since 1998, and therefore, that being his strongest equity simply wasn't a very strong equity. The Board also relied on the, found that Mr. Ventre's years as an LPR, and they were, you know, significant in length, were counterbalanced by his lack of any significant property or ties to the United States. And the Board also considered that his guilty plea to the international kidnapping charge was a significant adverse factor in his case. None of this turned on a credibility determination. Let me ask you a question. If the IJRBIA had gone to cancellation of removal before it made its abandonment decision, would your statutory argument still prevail? I believe so, because the finding is that he abandoned before he came to the United States. But it wouldn't make sense for an immigration judge to address that issue before, to address relief before tackling the threshold issue of removability. There's no reason to consider relief unless the alien, in fact, is removable. And the entire case hinges on the finding of removability. I see my time is starting to wind up, but I, just in closing, this case just simply, the agency did not lightly find that Mr. Ventre was removable. It gave considerable attention to this case. Mr. Ventre certainly had his day in court. He had multiple days in court. We believe the agency's decision is well supported by the voluminous record and ask the court to affirm. Thank you very much. Just very briefly on the abandonment issue. The sequence of events are these. Mr. Ventre went to Italy in 1998. He'd been there the year before with his daughter in 1997 and returned. It was a vacation. He went in 1998 on a 10-month business trip, and the evidence that that was the intent of the trip is undisputed. There was no evidence that came in to the contrary. When he goes to Italy, and he admitted that he should have, in writing, notified the mother. He didn't do that, and as a result, she started a custody battle. He fought that battle in the United States as well as in Italy. He did not have a lot of financial resources, but that's not a factor to be held against him. I mean, he didn't have a lot of property in the U.S. He didn't have property in Italy either, and he could not afford to go back and forth on this custody battle, but he did make a good-faith effort to hire a lawyer in the United States. And that lawyer, as we point out in our brief, when he spoke to Mr. Ventre, Mr. Ventre said, send correspondents to my house in the United States. He wouldn't have said that if he thought that he was no longer residing in the United States. And there's other evidence on the abandonment issue that we think take it well outside the clear, unequivocal, convincing standard that the government needs to meet on that point. As to the point on cancellation of removal, when I started, I don't think I made myself very clear. If we get to that point and you find that he did, in fact, abandon and the government met its standard, assuming that he did abandon, I think he's still entitled to relief under the first provision, dealing with legal permanent residence, because he had the privilege of being a legal permanent resident all the way up until the time the immigration judge said on August 26, 2002, I find you removable. The standard for abandonment is not a finding that he intended to abandon his legal permanent residency. It's an objective standard that says you went abroad and you didn't have firm enough plans to return in a quick time, and therefore we regard you as having abandoned. Well, that event may have resulted in his later loss of a privilege, the privilege of being a permanent resident, just as a crime committed years ago may result, or an aggravated felony may result in an alien being inadmissible later on. But it's the equivalent. I mean, the privilege exists until it's taken away. He didn't lose it in 1998 when he went to Italy. That's all I have. Do you have any other questions? Thank you very much, counsel, and thank you for doing this pro bono.
judges: Wallace, Wardlaw, Fisher